Case of the day is case number 4-14-0400, William Haley III v. Ashley Edwards. Let's see, Attorney DeFilippo is here for the appellant, and Attorney Jenkins is here for the appellate. All right, Ms. DeFilippo, you may proceed. May it please the Court, Counsel. We are here this morning on an appeal from an order issued by the Circuit Court which modified custody and granted exclusive custody of a three-and-a-half-year-old child to his father, William Haley, after the child had spent the first three-and-a-half years of his life living with his mother, Ashley Edwards. Now, we recognize that it is rare for an appellate court to find that the trial court engaged in an abuse of discretion in regards to a custody determination. The trial court, we admit, is in the best position to judge the credibility of the witnesses and to hear the evidence. Yet, we believe that this is the odd case where we believe that an abuse of discretion can be found. Now, there's two issues that I would like to discuss with you this morning. First, whether the court can sua sponte, modify the pleading that is before it, and transform it into a petition to modify custody where no custody modification is originally sought. And second, whether the court abused its discretion in awarding custody to the petitioner, Mr. Haley. Now, the first and fundamental issue that must be addressed in this matter is whether the court's order granting William exclusive custody of the minor was issued without authority and is void. Now, it is generally acknowledged that circuit courts have original jurisdiction of all justiciable matters. The court's authority to hear an issue and resolve a question is invoked through the filing of a petition. And this pleading then frames the issue for the court. The court cannot grant relief if there is no corresponding petition before it. We know that. That's in the brief. Yes. Tell us what happened here and what was wrong about it. What happened here... And we know that they're voidable. Correct. What is it that occurred that's wrong? And what was wrong with the petition to start with? Well, I think we have to look at the exact petition that Mr. Haley filed. What he filed before the court in October of 2013 is he filed a petition that he entitled a petition for child custody and for visitation. So then we have to look at exactly what did he put in this petition and what did he allege. He alleged that he was the father of the minor child. He alleged that he was a fit person to have liberal visitation. He then asked for his prayer for relief, asked for liberal visitation for the minor child. That is the only thing he alleged and that is the only thing he asked for. What's important to note here is that some of these things had already been established in a prior order entered by the court. Now back a few years before in 2011, an order for support was entered by the circuit court. This order of support ordered that Mr. Haley was to pay support to Ms. Edwards. Now by that order, the presumption is made that Ashley Edwards is the primary parent and has exclusive custody of the child. To overcome this custody that Ms. Edwards then had, Mr. Haley, it was his burden to have to file for a modification of custody. He had to ask to change custody and show certain things. Now the statute is pretty clear about what we need to have for a modification of custody. It says that a petition for modification has to be filed and that petition then has to be served on the petitioner or on the other party at least 30 days prior to the hearing. There was no petition for modification filed in this case, Your Honor. All that was ever asked for was visitation. Counsel, you said the initial filing was in October of 2013. What happened on November 20th, 2013? There was a case management, Your Honor. And what did that entail? That case management, the parties were instructed to go to mediation and to work out any issues that were between them. This is very typical in family law cases in that any time that... Were they to mediate over custody or only visitation? I believe it was only over visitation, Your Honor, as that was all that Mr. Haley had alleged and that was all that he had asked for. Was she pro se at that time? She was pro se at that time, Your Honor. She did not have trial counsel until after the default judgment was entered and that would have been entered in February of 2014. So from the time that Mr. Haley filed his petition in October to the case management that occurred in November of 2013 and the subsequent case management, Ms. Haley was pro se this entire period. So there's nothing in the record which would indicate the case management conference in November of 2013 put her on notice that custody was an issue? That's correct, Your Honor. If you look at the record, there is actually nothing in the record that makes custody an issue until the default judgment is entered in February of 2014. Does the fact that she failed to comply with the court's order to attend mediation make any difference as to whether custody therefore could become an issue? I don't believe that it does make custody an issue, Your Honor. I think if you especially look at default orders, that a default judgment cannot exceed the relief that is asked for in the original petition. As I just stated, the original petition in this case only asked for a liberal visitation. If the trial court had wanted to enter a default order and grant Mr. Haley as much liberal visitation as it would have liked to, I think that it would have been well within their reason to be able to do this. But then the default is vacated. Correct, Your Honor. Do you think that because he granted custody and then the default was vacated that the trial judge was on target to focus on custody and you would say improperly, but does that seem to be what happened? I would agree, yes, Your Honor. I believe that after the default judgment was entered, he ordered exclusive custody to Mr. Haley and then it was vacated about two weeks after that. And I believe that he thought that custody now became an issue. Our argument is exactly what you just said in that custody should not have been before the court and could not have been before the court unless an amended or an additional pleading was entered by Mr. Haley and his counsel. How about a temporary custody order? Could that have been an issue? I still don't believe that he could enter temporary custody without an appropriate pleading before the court or without a showing of sufficient circumstances that there was a change in circumstances or that there was harm to the child. So what are you asking this court to do in way of relief for your client? Your Honor, I believe that we have to consider the order that was entered in April of this year and the default order to both be void orders and to be reversed and the child to be placed back with Ms. Edwards. If Mr. Haley would then like to file a motion to modify custody and we go back to the trial court and proceed on a trial on that matter, then I think that would be appropriate. But I think we have to look at the fact that the orders that were entered in this case are technically void and should not be upheld. It seems to me that she was getting her notices at Mr. Haley's address. That's correct, Your Honor. Who was sending those notices there? Was it Ms. Jenkins or was it the circuit court? I believe it was the circuit court from what I can tell from the record, Your Honor. From what we could put together from the record, it looks like Ms. Jenkins actually sent the original petition to Mrs. Edwards at her residence and that she did receive that original petition and that's why she was on court in that original case management. After that, it looks like the circuit court, when they send out docket entries after every case management, they somehow mixed up the addresses, is the best that I can tell you, and that they started sending any notice to Ms. Edwards to an old address that Mr. Haley had given a few years ago. Okay, so he wasn't even living there anymore. No, he was not even living there. Both parties had changed residences and we know that at least Mr. Haley had Ms. Edwards' address as he originally did send the petition there. But I do think that shows the numerous problems that occurred in this case and that Ms. Edwards was not even receiving notice of any of the court dates that happened after the original court date that she missed. And we admit that she did not come to one of the case managements. That's clearly in the record. But by missing that case management, she never received another notice that there were any further case managements or about the hearing that took place in default in February of 2014. The person under case law, she's obligated to follow her own case, right? I'm sorry, Your Honor. I said under the case law, a litigant who's in a case, she knows she's in the case. It's her obligation to follow the case. In other words, check and see what's going on in the case if she hasn't gotten a notice. That's correct, Your Honor. She should have checked and she should have been more aware. Unfortunately, she did not know that there were any case managements occurring after the one that she missed. She did not know that there was a hearing scheduled since she missed the case management date. So did he just show up at her house after the default was entered with the order and said you have to give me the child? I believe the order was sent to her. It was sent to her address at home in Chicago. So somebody had the address. Was that sent by Ms. Jenkins? I believe it was sent by Ms. Jenkins. And then I believe there were phone calls between the parties once the order was entered to tell Ms. Edwards that an order had been entered and that she needed to give up the child. At that point, that is when counsel got involved, Your Honor. How old is this child? The child will be turning 4 now, was 3 1⁄2 at the time of trial. And had lived with the mother for 3 1⁄2 years. That's correct. The child has lived exclusively with the mother from the time that the child was born until Mr. Haley took over temporary custody. Which was? That happened in March of this year, Your Honor, in 2014. So the child was 3 1⁄2 at the time and would have just turned 4 in September of this year. So I believe what we have here is a situation where we do have a fatal flaw in the pleadings. And that's the flaw that needs to be rectified in this order. And that because of this fatal flaw that the orders are void and they need to be reversed and overturned. Did you have any other options other than participating in the hearing? No. I don't believe that we did, Your Honor. By the time that we got to that point, we had filed a motion to vacate the default order that was entered. And the trial court at that point did vacate the order, but at the same time granted temporary exclusive custody to Mr. Haley. So a custody exchange had to take place. And I believe the trial court made it take place within the next 48 hours, if not 24 hours. But it was a very quick exchange that happened. And temporary custody was not an appealable order. Correct. So I believe that we had to participate at that point forward. A trial was set as quickly as possible to try to change whatever we could in this case. And I think it's important to even look at the docket entry in this case in that the docket entry setting the final hearing that we had in this case merely said that the matter was set for hearing. It didn't even say that this was set for a custody hearing. It didn't say that it was set for a trial on custody. It said that the matter was set on hearing. And what we said when we went to trial and pointed out to the court at the very beginning of the hearing was the only pleading that was before the court was the petition that Mr. Haley had filed in October of 2013 asking for visitation. It was at that point that the trial court responded that, yes, it had that pleading, but it had decided that it was going to consider that pleading a motion to modify custody and it asked counsel to proceed. At that point, counsel did not believe that there was any other option at that point but to proceed in the hearing. Otherwise, the child was going to stay in the exclusive custody of Mr. Haley. To get Ms. Edwards some relief, there was really no other option but to continue participating in this hearing to try to get the child back with his mother, which is what we were looking to do at that point. What I think is very important to note in this case is that, like we have said, it did all start with a default order. There is case law that says that a default order cannot exceed the relief that is asked for. That's exactly what happened in this case, is that the default order exceeded the relief that was asked for and granted exclusive custody of the child to Mr. Haley. We then had a bit of a snowball effect that once Mr. Haley had exclusive custody, even though that was vacated, he was then given temporary custody. As you can tell from the record, these two parties were not able to work with each other very well and we even had to go to a court on a motion for emergency visitation because Ms. Edwards wasn't getting visitation. The parties weren't communicating very well with each other. This temporary custody then turned into final custody, which Mr. Haley eventually got in this case. So I think we can always go back to that default order, which is what started everything off in this case. I also want to point out that if we look at the testimony that was presented at trial, a lot of Mr. Haley's testimony, his mother's testimony, and his stepfather's testimony at trial really looked at the last month and a half, two months, that the child had been in Mr. Haley's care. They talked about how well the child was adjusting to being with Mr. Haley, how well the child was doing, how happy he was to be with his father, how he was enrolled in preschool, daycare, and how he was going there a few days a week, how he was spending time with his other siblings, with Mr. Haley's other children. That testimony only occurred because of that default order and because Mr. Haley received that temporary custody. He would have never had a lot of that testimony if we hadn't had him receive temporary custody in the first place. So I think that's important to note in this case, is how did we get to where we were in the final hearing? And was that testimony, was it all something that should have been taken into consideration? Because they focused a lot of their testimony on the last two months. It seems to me, even if a proper pleading had been filed, they have to allege a substantial change in circumstances, and that would have occurred prior to the child being placed with him. Correct, Your Honor. And this is more best interest information. Exactly. What's in the best interest of this child as we speak today? I believe that the best interest of the child is to go back with his mother and to be with the mother that he has lived with and the family that he has known for the first three and a half years of his life. Let's suppose that you had filed a motion to reconsider. Yes, Your Honor. And the court granted the motion to reconsider and said, you know, I'm not awarding permanent custody. What would the trial court have been entitled to do at that point? I understand that, based on the evidence presented, I understand the pleading aspect. What do you think a trial judge would have done? If they decided not to award permanent custody and to just have the Whatever orders would be entered would be temporary. Okay. Well, I believe that you can only have a temporary order for so long, Your Honor. I agree. So I believe that the trial court should have put the child back with his mother and back to the life that he was living. What should the trial court have done about the testimony regarding some of those incidents? Well, I believe With the allegation against Carlos and the hammer and smashing the car and some of that and the consumption of alcohol and marijuana, which may have helped make that incident more volatile. I mean, what are you supposed to do with that if you're a trial judge? I believe that the trial judge should have looked at the two incidents that were presented, one, the one you talked about with Carlos, as two isolated incidents. And there's a couple things to look at with those incidents. One, how long ago those incidents happened. Okay. Now, let's just say that I agree. Okay. What about the ability to cooperate? That's pretty much throughout the case, isn't it? Yes, it is. The ability to cooperate is very much throughout the case. We definitely have two people here who are not very well able to communicate with each other. I think we should hesitate, though, before we start awarding custody determinations just merely based on the party's ability to communicate with each other. If we start making custody determinations just based on this factor Well, that's exactly one of the things that you consider when you're going to enter joint custody. Obviously, that's a factor. I completely agree with you that it's a factor, Your Honor. But there was never even a visitation order in this case. There was not a visitation order. It was left up in the air, I guess. Who's to say, if there had been a visitation order, that the parties wouldn't have cooperated with respect to whatever order was entered? I completely agree, Your Honor. And if there had been a visitation order, we may have been in a completely different place. And it sounds like these parties were actually communicating to a certain level. They had worked out a somewhat every-other-weekend visitation that they had been following. It didn't work out every week, but that's what they were trying to do, is they were trying to do something along those lines. But things, as they ultimately happen in custody and divorce cases, is they got complicated and the parties stopped communicating with each other. It specifically happened when Ms. Edwards moved permanently back to her permanent residence in Chicago. I believe that if the parties had been able to just talk to each other, they may have been able to keep that same visitation schedule, since that is what they're using now. And they've been able to work that out now, since this order was entered, and that the parties are alternating weekends. So if we had had a visitation schedule in place in the first place, we may have never gotten into the situation that we are now. But I think if we look, like Justice Connick was saying, at the incidents that were important in this case, I believe that's what the court made its decision on in this case. I believe that communication was a small factor, but if you look at the court's order, I think it was very much based on the two incidents where the court described Ashley's angry and destructive manner. I do believe that it was an abuse of discretion by the court to take these two incidents and decide that a change in custody was warranted. If we look at the two incidents, one happened over two years before the trial. The other one happened a year before the trial. These were two isolated incidents where Ms. Edwards got into arguments with the person she was then dating. I'm not saying that either incident showed good judgment on the side of Ms. Edwards, but I also believe that this court has said that isolated incidents that show poor judgment by the parents themselves, and I see my time is up, if I could just finish my thought, this court has said that isolated incidents that may show poor judgment by the parties themselves are not always enough to overturn a custody determination. We have to look at what is in the child's best welfare and have these incidents directly affect the child's welfare. The child was not directly involved in either of these incidents. The incident was between Ashley and the boyfriend. If we look at what has occurred between the last incident and now, we can show how much Ashley has turned her life around and how she's not engaged in any of these incidents like that in at least over a year, and I believe that's very important and it's something that the court did not consider. Thank you. Thank you, counsel. We have more time on rebuttal. Thank you. Ms. Jenkins. Please. Please, the court, counsel. Ashley Edwards' conduct was not an isolated incident with regard to the violent incident that was related with regard to Carlos and such. Mr. Flippo said that it did not involve the child. Well, to the contrary, the child was there. Now, when she was testifying in court, at first she said that the child was not there, but then a police officer called to testify, said that the child was there, and that the reason why the police officer was there is because Ashley Edwards had made sexual allegations against her boyfriend, Carlos. And the officer determined, he looked at the boy and determined that the boy was okay. Well, then Ms. Edwards said that she couldn't remember because she was intoxicated. She was intoxicated and she was using cannabis. She was bleeding. She had busted out Carlos' windows. And there was also another incident that is mentioned in the brief where she came to William's house and she basically fought her way into the door, in the door, through some of his personal items around, and he basically had to contain her and get her out of the house. Now, keep in mind that the judge not only is listening to testimony with regard to these incidents. But the question is, should he have been? So here's the thing. You're a very experienced family law lawyer. When you filed that petition, it's clear when you read the petition, you were looking for visitation. There are no allegations in your petition about a substantial change of circumstances. And I know that you know the law very well, Ms. Jenkins. Thank you. So you went to court. In my opinion, when you filed that pleading, you were seeking visitation, a set visitation for your claim. Yes. It turned into a custody proceeding. It did. Now, how is the court authorized to change custody without even a pleading on file, asking for that? First off, Justice, we wouldn't be here if it weren't for the uncooperativeness of Ms. Edwards. You're exactly right. And we're experienced enough to know what was going through Judge Narduli's mind. Right. And he was disturbed and concerned about a lack of credibility, a lack of cooperation, and these two incidents, whether he focused on them too much or not. He's thinking to himself, these people are screwed up, and I think right now I need to do the best thing for this child. But the problem is, he's not in juvenile court. There's not already been a temporary order that affects, under juvenile court rules, this is the equivalent of a marriage, though they were not married. You've got to know what's going on. And the pleading just isn't there. And he converted it, because he's PO'd because the mediation doesn't occur, the case manager, nobody's showing up when they're supposed to, they screw up with the orders and the notices. He enters an order, then he vacates it, and he figures, I've got to do something. So we're going to have a custody hearing. Well, with regard to the pleading, essentially the pleading was a pleading to establish visitation, because Mr. Haley had been denied visitation. And if Ms. Edwards had cooperated at the beginning, we probably wouldn't be here. Right. But that didn't happen. Yeah, and based on her conduct during these proceedings, and her demeanor and the deprivation that Mr. Haley had had regarding visitation, the judge basically found that there had been a substantial change in circumstances. How do you defend against a substantial change in circumstances if you don't know that's what the standard is and that's what's happening? Well... I mean, how do you bring in all this evidence that there's been a substantial period of time where she's in a more stable situation, she's got a support network, she's not drinking any more, assuming those are the facts, you know, things are better. The fact is, Justice, it was abundantly clear that she was not fostering a relationship between that child and Mr. Haley, and also she was downright obstructive about it. The judge basically decided, based on what he witnessed with regard to her conduct, her demeanor, and her past actions, that a substantial change had occurred. I'm going to answer this question, though. He's ordered to pay her $40 a week in child support. She can't even afford the train ticket to come down to Springfield to do the mediation. And then he's behind thousands of dollars in his child support at $40 a week. So, in some ways it's understandable that her demeanor in court might be a little frustrated and angry when she lost custody of her child without a proceeding. A pleading, a correct pleading. Well, and Your Honor... You know, if you put the shoe on the other foot, is what I'm saying. If you look at it from her perspective, you can understand. Yeah, and no, and Justice Pope, I understand completely, but she had an opportunity to participate meaningfully in this. And she came to the case management conference on December 18th. They were sent to mediation. She indicated that she fully understood what was expected of her. And then she didn't come to another case management hearing. Right, but she wasn't getting the notices, right? Well, but she has a duty, Your Honor, to follow her case. And all she had to do was to log on to the internet, make a phone call. She knew that this case was going on. And she knew that Judge Narduli expected her to participate in mediation and then for her and Mr. Haley to come back with some sort of an agreement, if possible. And she failed to participate. She failed to do what she was supposed to do. So Judge Narduli said that he found, based on her conduct and based on her attitude in depriving Mr. Haley of visitation, that he was finding that a substantial change in circumstances had indeed occurred. Counsel, prior to the hearing where custody was changed, is there anything at all in the record which could be construed to have put respondent on notice that custody had become an issue? Well, it's kind of lame, Justice, but the pleading itself was titled Petition for Custody. Okay, well, I don't think that's enough, frankly. But is there anything that the court said in the case management proceeding that could reasonably be construed to say custody has become an issue, and should you be prepared when we come back to court and start presenting evidence that the court is considering what is in the best interest of this child as to where custody should be placed, either temporarily or permanently? I don't recall anything like that being said in the case management conference, but it's broadly interpreted he's sending them to custody mediation. Well, mediation could be used for visitation as well. The other thing is, in Sangamon County, is it typical that the result of mediation, unless it's a positive one with an agreement, that that's held against the party? If they refuse to participate. How do they refuse to participate? By missing the appointments? By not showing up, or if they do show up, essentially. What if they show up and don't engage? If they don't engage, then it's up to the mediator whether or not he or she wants to say that the mediation was unsuccessful, or the mediator can report back to the court that one party refused to participate. And that's the language that's used? Yeah, there's a form. And is it typically that that's going to be held against you? Yes. Yes, if there's a refusal to participate. And that's essentially what this was about, and I guess Ashley Edwards just thought that we would go away if she just ignored us, and that was not the case. So the trial court originally ordered mediation. Did the trial court indicate that the mediation was for visitation only, or for visitation and custody as well? The trial court didn't make a, didn't state that. It just sent them to mediation. So, but with regard to the pleading, the pleading also asked for such other and further relief as the court deems just, and essentially in these circumstances, Judge Nardulli obviously felt that it was just to order that there had been a substantial change in circumstances and to grant temporary custody to Mr. Haley. And then after... Counsel, suppose this court thinks that the permanent custody order cannot stand because there was no notice. Can a temporary custody order stand? Judge, I don't believe that the temporary custody order should stand, or could stand, but I do believe that the permanent custody order should stand because she actively participated in trial. She put on evidence. What choice did she have at that point? She couldn't take an appeal from the temporary custody order. She has to wait until the proceedings finish to take an appeal from the permanent custody order. So if she didn't participate, she's in the same position she is today. Well, she did proceed as though it were a custody hearing, and essentially... Well, is there some kind of an assertion that because of the lack of notice in the pleadings that she had to forego certain evidence that she would have presented had she known, or is that somewhere in this record? That there was more evidence that she could have presented had she known what the precise issue the court was looking for? No, Justice. She knew exactly what this trial was all about, and she presented evidence. She put on witnesses, her family members, people who testified with regard to her interactions with Logan, and she knew exactly what this trial was all about. She knew that it was for custody. Okay, well, that kind of confuses me because I ask you, is there anything in the record to show that she was put on notice and you said no, and yet you said that now she did know and presented all the evidence that she had in her possession regarding custody. So how do those two responses... I would say that the temporary order put her on notice because even if she didn't believe that custody was an issue, the temporary order basically removed all doubt. So she had a full opportunity to prepare for trial, and she did, she prepared for a custody trial, and essentially the judge who had the opportunity... How much time did she have to prepare for the trial? She had at least as much time as my client, Your Honor. She had time to get her witnesses... Well, a number of days, weeks is what I'm trying to get at as a time frame. She had over two months. Okay. And with regard to the trial itself, of course, there's Judge Narduli. He is the one who has witnessed her testimony, her attitude, her demeanor all throughout this, and essentially he wrote a very detailed, cogent order, and basically his conclusion with regard to Ashley Edwards is that she is not worthy of belief. And essentially he heard the testimony from William's family, and William with regard to Logan's interactions with William and William's family and how he was adjusting to the home life and the environment, the stable environment that was available to him. So after the judge had the opportunity to observe all the witnesses and all the testimony, he went through the 602 factors and determined that Logan would be best with William, and mainly it's because of Ms. Edwards, it's her own fault, because she would not foster a relationship between Logan and his father. Didn't the evidence show that even when she was in Springfield, at least during the first year of the child's life, he didn't have much contact at all? Didn't request contact? He testified otherwise. Essentially Mr. Haley said that Ashley prevented him from having visitation. They did work out kind of a rough visitation schedule at one point, but still she took basically a proprietary view over this child, like this is mine, here you can have him, no, I'm snatching him back, and she would take him for long periods of time up the Chicago area and Mr. Haley felt like there wasn't anything that he could do about it. That's how he ended up in my office. Yeah, but he could have gone into court like he finally did and asked for visitation to be set by the court. Yes, and basically since that obviously was not going to work out since she wouldn't even participate in those proceedings, essentially it was necessary to move on to custody. How are we going to give Mr. Haley any redress? How are we going to foster the relationship between this child and his father? Ms. Edwards is not going to do that. So essentially Judge Narduli made the decision and he wrote out his reasons very carefully in his order as to why he made that decision. It's not an abuse of discretion. It's not against the manifest weight of the evidence. He knew all the facts. He had the opportunity to hear the testimony, see the people, and he made the determination that it's in Logan's best interest that he be with William. As far as her not having notice and such, I would restate again that she had a duty to follow her own case and she had plenty of opportunity to prepare for trial. In participating at trial and putting on evidence, essentially she waived any non-jurisdictional question as any objection to any non-jurisdictional question with regard to the pleadings. And with regard to the pleadings, I would say the pleadings were broad enough that it gave the judge the discretion to determine that there had been a substantial change in circumstances. Because we went to the court, we were asking for help, we were asking for relief, and we asked that he have liberal visitation, but we also asked the judge for any further or different relief that he deemed just. And that's what the judge did, since he could not, obviously there's nothing that he could do with Ms. Edwards if she would not participate, then essentially he was going to remedy this custody, this situation between Logan and his father by putting the child with his father. But unfortunately, and I understand she had a duty to follow her case, the notice is clear, it's undisputed, they were going to the wrong address. So... And then to default somebody on a custody issue when notice isn't going to the correct address seems like a drastic measure. Justice, I don't consider that a default. Didn't he enter a default? No, it wasn't a default. Basically he just entered a temporary custody order in the... I thought he entered a permanent custody order by default. No. And then vacated that order and entered a temporary custody order. He placed a custody temporarily with Mr. Haley, and then he did later vacate that order, but he vacated it again, and then he entered an order giving Mr. Haley temporary custody and giving Ms. Edwards visitation. Let's see, I'm going to ask one other thing. Go ahead and finish up your remarks, I'll think of it. And I believe that he was well within his discretion in doing so. And the case law bears out that he's not necessarily confined to the prayer that is in the pleadings. Essentially he can look at the circumstances, and if it's within breach and it's pled generally, or if it's suggested to in the pleadings,  Doesn't the statute require you to allege a substantial change of circumstances and what that substantial change is? That's essentially what the statute requires, Your Honor. If I had filed a petition to modify custody, then yes, it would be dismissed if I failed to allege a substantial change in circumstances. And what would the substantial change of circumstances have been? If you were to allege those? If I were to allege, basically there'd been a substantial change in circumstances because he was being deprived of visitation and custodial time with his child. Also there was a substantial change in circumstances because she was no longer residing in Springfield, but she had moved back permanently to her home near Chicago. And also there was a substantial change in circumstances. Isn't there testimony that she also did that? Went back and forth during the period that he was either not involved or beginning to be involved? Yes, she had a residence. My time is up. She had a residence here in Springfield, and she also had her mother's home up near Chicago. Thank you, Ms. Jenkins. Thank you. Counsel, any rebuttal? Thank you. I would like to start, Your Honor, by just saying I do have to disagree with Ms. Jenkins when she stated that there was not a default judgment in this case. I think the record very clearly shows that the order that was entered on February 5th, 2014 was a default judgment. Ms. Edwards did not receive notice of the hearing that was to occur that day. She did not show up at the hearing. And if we look at the order that was entered that day, it was a default judgment saying that Ms. Edwards failed to appear and permanent custody was given to Mr. Haley at that time. Did he use the word permanent? I can't remember if he used permanent or exclusive. So further custody with Mr. Haley until further order of court? Correct, Your Honor. I can't remember the exact wording that he used, but it was very clear from this order that custody was placed with Mr. Haley. It was not a temporary order. And at that time, he did not even award any visitation to Ms. Edwards. He said that visitation was reserved until such time as Ms. Edwards came before the court. So without knowing that custody was even going to be an issue in this case, there was an order entered that gave custody, changed it from Ms. Edwards to Mr. Haley based on that one order. And that is the order that started everything today. Another point that I'd just like to pick up on that Ms. Jenkins addressed is she spent a lot of time talking about how the court looked at the 602 factors and how the court looked at fostering the relationship. And I believe that we can all agree that those factors and fostering the relationship are very important in any custody case, and we don't dispute that whatsoever. But before we can even get to those factors, we have to address whether there was a substantial change in circumstances and whether that change in circumstances was enough that custody should be looked at and whether we should modify custody and whether the change in circumstances affected the welfare of the child. Those are the statutory requirements that the court first has to find before we even get to the factors of this case. And we believe that the court abused its discretion in finding that there was a change in circumstances. Ms. Jenkins just looked at a couple of things, and she said it was a change in circumstances because Mr. Haley wasn't receiving visitation. I believe Mr. Haley's own testimony at trial was the first year of the child's life he was not involved. He would be involved sporadically when he felt like it. Occasionally, he would. Now, we fully admit that after the first year, the parties did start communicating better. They worked out a rough schedule. He would get approximately every other weekend. But again, it was kind of up to the parties, and it didn't happen every weekend. And it was based on what the parties were doing. So Mr. Haley not really being involved in the child's life, I don't think he can put all on Ms. Edwards. There was a portion of it that I think you apportioned to him as well, and whether or not he was making the effort to be involved in the child's life. Counsel, let me ask you hypothetically, because I know you're not going to agree with the initial premise, but what if the evidence shows clearly in the best interest of this child to be placed with the father at this time? Would you still be here arguing that because of the insufficient pleadings, that trumps the best interest of the child? I absolutely would, Your Honor. Unfortunately, in these cases, we cannot proceed in custody cases or divorce cases unless the rules are followed. We have to follow the rules, and we have the statutes there for a reason to show us what has to be done in each case. It is not justice, and it is not fair to the parties involved. If someone doesn't follow the rules... Counsel, don't deny that that argument has a lot of merit. There's just a lot of case law that says best interest of the child is always the number one concern of any court. And I would agree with you, and 99% of the time, Your Honor, maybe not exactly that high, but I would agree with you, with a lot of the time that best interest should be the overwhelming factor. Unfortunately, in this case, I believe that best interest comes in third. First, we have to look at was the statute followed? Were the rules followed? Were the pleadings sufficient? Was the court allowed to make the order that it did? Is the order void? Second, like I said, before we even get to best interest in this case, there has to be proven that there was a substantial change in circumstances that take us to best interest of the child. We already had a presumption that the mother was the primary custodian in this case. That presumption is very high, and that we have case law that says that we shouldn't easily be changing who is the custodian. We favor stability for children. We favor them being with one parent. So we have to show that there's enough of a reason to overcome to even get to the best interest standard. Thank you, Your Honor. We'll take this matter under advisement.